UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KHA'SUN CREATOR ALLAH,

         Plaintiff,       Case # 16-CV-177-FPG

v.                     DECISION AND ORDER

PAUL PICCOLO, et al.,

         Defendants.

## INTRODUCTION

*Pro se* Plaintiff Kha'Sun Creator Allah, an inmate at Elmira Correctional Facility, brings this 42 U.S.C. § 1983 action against Defendants Paul Piccolo, Paul Chappius, Latotsha Carrington, and Heather Laseur. ECF No. 1. Plaintiff alleges that Defendants violated his Eighth Amendment rights by subjecting him to improper confinement conditions.

On March 4, 2019, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 33. For the reasons that follow, the Court grants Defendants' motion and dismisses this case.

## BACKGROUND[1]

Plaintiff alleges that Defendant Piccolo violated his Eighth Amendment rights when he implemented a policy that restricts inmates from using personal clothing and does not provide "thermal protection from the elements." ECF No. 1 ¶¶ 14, 43. Plaintiff also alleges that Defendant Chappius failed to act when he was notified of the policy and that Defendants Carrington and Laseur directed him to remove his hat and scarf in "inclement" weather.[2] *Id.* ¶¶ 22-23, 46.

---

[1] The Court draws these facts from the parties' Statements of Undisputed Facts and evidentiary submissions, which are undisputed unless otherwise noted.

[2] Plaintiff defines "inclement" weather as "anything under 55 degrees." Pl. Dep. at 38-41.

On or about August 26, 2015, an update was issued to the Elmira Facility Operations Manual, Inmate Dress Code No. 14.02. The update restricted the times and places that an inmate may wear personal clothing. ECF No. 1 at 13-16; *see also* Declaration of Paul Piccolo ("Piccolo Decl.") ¶ 14. As it pertains to this action, Policy No. 14.02 reads:

> 7. Recreation Areas
>
>     a. Yard – Upon arriving to the yard, inmates may wear shorts, if desired. Upon returning to Housing Unit or call out, inmates must dress in state pants and state shirt.
>
>     . . .
>
>     c. Gym – State-issued pants and state shirt, shoes/sneakers will be worn to the gym. Once in the gym, sweat pants, shorts, tank top, and T-shirt are permitted.

ECF No. 1 at 13-16. Program areas also require state-issued pants and shirt. *Id.* There were no additional restrictions on an inmate's use of state-issued clothes. Piccolo Decl. ¶ 15.

With respect to cold-weather clothing, inmates can use winter coats, hats, scarves, and thermal underpants from October 15th to April 15th and as the watch commander on duty deems necessary. *Id.* ¶ 12. The winter clothing policy did not change when the dress code policy was updated. *Id.* ¶ 17.

All recreation is voluntary and an inmate may decline to participate at any time. *Id.* ¶ 20; Pl. Dep. at 27, 54. Plaintiff also testified that inmates do not have to stay in the yard for the entire recreation period. Pl. Dep. at 27, 54.

Plaintiff complains that he was not allowed to wear personal clothing upon leaving recreation and challenges the adequacy of the state-issued clothing. His claims arise from four incidents.

On August 27, 2015, it was raining when Plaintiff left for evening recreation, and the rain increased during the recreation period. *Id.* at 22-33. He testified that he wore his state shirt and pants to the yard that day, and then switched into his personal hooded sweatshirt and sweatpants. *Id.* at 32. Plaintiff owned a personal poncho but did not use it during recreation. *Id.* at 23, 32. When he returned from the yard wearing his personal clothing, Defendants instructed him to change into his state-issued shirt. Plaintiff alleges that he had to take off his sweatshirt "in the pouring rain and put a shirt on that didn't cover [his] head." *Id.* at 27. Plaintiff testified that the walk took approximately 7-8 minutes. Pl. Dep. 22-32. As a result of walking in the rain, he was "a little under the weather," but it "wasn't major enough for [him] to really go to sick hall." *Id.* at 33-34; *see generally* Declaration of Jill Northrop ("Northrop Decl.").

On October 2, 2015, Plaintiff was walking to the guidance hall in 45-degree weather. Because he was sick with a cold, he wore his hat and scarf. Pl. Dep. at 36-37. Defendants Carrington and Laseur directed Plaintiff to remove his hat and scarf pursuant to the winter clothing policy. *Id.* at 37-38. Plaintiff was outside for about 20-30 minutes without these items. *Id.* Plaintiff testified that he knew he was not allowed to have a hat and scarf before October 15, but that the weather was "inclement" and the watch commander should have permitted winter clothing that day. *Id.* at 39-40. Plaintiff alleges that, because he was denied these items, he got strep throat and headaches. *Id.* at 49-50. Plaintiff sought medical treatment and received over-the-counter medication. *Id.*

On October 3, 2015, it was "cold and wet" outside when Plaintiff left to attend voluntary recreation in the gym, which is about a 3-minute walk from his housing block. Pl. Dep. at 53. He was not allowed to wear his hooded sweatshirt returning from the gym, which he claims

3

"enhanced" his strep throat. *Id.* at 54. Plaintiff testified that he had a sore throat, headache, and was coughing for about two weeks. *Id.* at 55.

On October 16, 2015, Plaintiff had to walk to and from a voluntary workshop program without a hooded sweatshirt or poncho when the weather was cold and rainy. Pl. Dep. at 56-57, 60. Pursuant to Elmira's policy, only state-issued clothing was permitted, which included a coat. *Id.* at 57. Although Plaintiff testified that he did not wear a coat that evening, *see id.*, he states in opposition to Defendants' motion that he was subjected to the cold rain "with just the state-issued coat and state-issued sweatshirt. The coat contains no hood[.]" Pl. Mem. at 3. It is unclear how long Plaintiff stood in the rain, but he claims that his throat condition worsened due to his repeated exposure to the weather. Pl. Dep. at 57-60. His throat problem cleared up after a few weeks. *Id.* at 59.

Plaintiff's medical records do not reveal a strep throat diagnosis from August 2015 through November 2015. *See generally* ECF No. 22, Northrop Decl. ¶ 14. Rather, Plaintiff presented to medical with complaints of self-diagnosed strep throat, nasal congestion, and drainage. ECF No. 22 at 13. Upon examination, however, he had no redness or white spots on his throat. He was given Medicidin-D and Motrin and told to increase his fluid intake for treatment of a common cold. *Id.*

Plaintiff also alleges that he was "forced to wear one dirty sweatshirt" because laundry services are only provided once a week. ECF No. 1 ¶ 42.

## DISCUSSION

### I. Summary Judgment Standard

A court grants summary judgment when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a)-(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). It is the movant's burden to establish the nonexistence of any genuine issue of material

fact. If there is record evidence from which a reasonable inference in the non-moving party's favor may be drawn, a court will deny summary judgment. *See Celotex*, 477 U.S. at 322.

Once the movant has adequately shown the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to present evidence sufficient to support a jury verdict in its favor, without simply relying on conclusory statements or contentions. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (internal quotation marks omitted). Here, in light of Plaintiff's *pro se* status, the Court will construe his opposition papers liberally "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2009) (internal quotation marks omitted) (emphasis in original).

## II. Conditions of Confinement

The Eighth Amendment requires prison officials to "provide humane conditions of confinement[,]" *see Farmer v. Brennan*, 511 U.S. 825, 833 (1994), but it "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Conditions of confinement inflict cruel and unusual punishment when they result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir. 1985) (citation and quotation marks omitted). But "conditions that are restrictive and even harsh are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quotation marks and citation omitted). Thus, the question is whether the defendant deprived the plaintiff of a basic human need or the minimal civilized measure of life's necessities. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and quotation marks omitted). Prisoners "may not be deprived of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions

that pose an unreasonable risk of serious damage to their future health." *Hamilton v. Deputy Warden*, No. 15-CV-4031, 2016 WL 6068196, at *8 (S.D.N.Y. Oct. 13, 2016) (quotation marks, alterations, and citation omitted).

A conditions of confinement claim involves objective and subjective components: "objectively, the prison officials' transgression must be sufficiently serious and subjectively, the officials must have acted, or omitted to act, with a sufficiently culpable state of mind, i.e. with deliberate indifference to inmate health or safety." *Pagan v. Dougherty*, No. 18-CV-1668, 2019 WL 2616975, at *5 (D. Conn. June 26, 2019) (citation, alteration, and quotation marks omitted).

Plaintiff alleges that Defendants subjected him to "inclement" weather without appropriate clothing four times due to a new dress code policy. *See generally* ECF No. 1. Although "excessively hot or cold conditions" may violate an inmate's constitutional rights, courts have found allegations of exposure to extreme temperatures for short periods of time insufficient to state an Eighth Amendment claim. *Wingate v. Robert N. Davoren Ctr.*, No. 12 Civ. 5521, 2013 WL 4856573, at *3 (S.D.N.Y. Sept. 10, 2013); *see also Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (holding that an Eighth Amendment claim could be established by proof that an "inmate was subjected for a *prolonged* period to bitter cold") (emphasis added).

On August 27, 2015, when Plaintiff had to remove his hooded sweatshirt while returning from recreation, his exposure to the rain for no more than 8 minutes did not create an unreasonable risk of substantial harm. *See, e.g.*, *Gamble v. City of New York,* No. 04 CIV. 10203, 2009 WL 3097239, at *5 (S.D.N.Y. Sept. 25, 2009) (no constitutional violation where the plaintiff was not allowed to wear hooded clothing, was not given raingear, and was exposed to rain on 10 occasions).

On October 2, 2015, when Defendants Carrington and Laseur directed Plaintiff to remove his hat and scarf in 45-degree weather and wait for 20-30 minutes, Plaintiff was not subjected to a condition that presented a serious risk to his health. *See, e.g.*, *Ruggiero v. Fischer*, No. 15-CV-0962, 2018 WL 7892966, at *8 (W.D.N.Y. Sept. 27, 2018), *report and recommendation adopted sub nom. Ruggiero v. Fisher*, 2019 WL 1438810 (W.D.N.Y. Apr. 1, 2019) (prison's refusal to give plaintiff gloves for his one-hour outdoor exercise period did not violate the Eighth Amendment).

Plaintiff's claims related to October 3, 2015 (walking to the gym in rainy, 50-degree weather without a hat, scarf, or coat for 3 minutes), and October 16, 2015 (walking to and from a voluntary program in the cold and rain without a hooded sweatshirt or poncho), must fail for the same reason—Plaintiff's allegations of brief exposure to cold and/or damp weather do not amount to constitutional violations. *See, e.g.*, *Tyler v. Argo*, No. 14-CV-2049, 2014 WL 5374248, at *1, 6 (S.D.N.Y. Oct. 10, 2014) (no Eighth Amendment violation where inmate was not given a jacket or coat to walk from housing unit to main building where he had to wait outside for up to 20 minutes); *Santiago v. Whidden*, No. 10-CV-1839, 2012 WL 668996, at *5 (D. Conn. Feb. 29, 2012) (collecting cases finding no constitutional violation where inmates were required to walk between buildings in the rain); *Stevens v. City of New York*, No. 10 Civ. 5455, 2011 WL 3251501, at *4 (S.D.N.Y. July 22, 2011) (summarizing cases in which courts found that exposure to cold was not sufficiently severe or prolonged to violate the constitution).

Here, Plaintiff has not put forth evidence establishing that he was subjected to bitter cold for an extended period of time. To the contrary, Plaintiff testified that, at most, he stood in 45-degree weather for about 30 minutes—neither of which is extreme. Thus, in light of the temporary nature of Plaintiff's exposure to poor weather, a rational jury could not find that he faced a substantial risk of serious harm to his health or safety. *See Skelton v. Bruce*, 409 F. App'x 199,

208 (10th Cir. 2010). Moreover, on all four occasions, Plaintiff voluntarily attended recreation, guidance, and the educational program despite the bad weather. *See, e.g.*, *Santiago*, 2012 WL 668996, at *5 (noting that an inmate is not required to visit the commissary and that the plaintiff "had the option of going to the commissary in the rain" and "could have declined").

Plaintiff also cannot show that the alleged deprivations posed a substantial risk of serious harm. He alleges that he got strep throat from the cold and damp weather, but the evidence shows no diagnoses other than the common cold. Plaintiff's sore throat, congestion, and headaches are not sufficiently serious to infringe upon his Eighth Amendment rights. *See, e.g.*, *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) ("[B]reathing problems, chest pains, dizziness, sinus problems, headaches and loss of energy . . . are not sufficiently serious to be constitutionally actionable."); *Kemp v. Wright*, No. 01 CV 562, 2005 WL 893571, at *5 (E.D.N.Y. Apr. 19, 2005) (sinusitis not sufficiently serious to implicate the Eighth Amendment); *Davidson v. Scully*, 155 F. Supp. 2d 77, 86 (S.D.N.Y. 2001) (finding that headaches, earaches, sinus congestion, throat and eye soreness, tearing, nasal infections, and breathing problems are not serious medical conditions because they "do not produce death, degeneration, or extreme pain").

Finally, to the extent Plaintiff alleges that he had to wear a dirty sweatshirt because laundry services are provided only once per week, *see* ECF No. 1 ¶ 42, this allegation does not constitute an Eighth Amendment violation.[3] *See, e.g.*, *Henrius v. Cnty. of Nassau*, No. 13CV1192, 2016 WL 1296215, at *15 (E.D.N.Y. Mar. 31, 2016) (jail's failure to provide the plaintiff with more than one uniform for two weeks did not violate his constitutional rights); *McCorkle v. Walker*, 871 F. Supp. 555, 557 (N.D.N.Y. 1995) (finding that the lack of a change of underwear for fifteen days did not violate the plaintiff's constitutional rights); *but see Pellis v. Hobbs*, No. 16 CV 4023 (VB),

---

[3] Plaintiff also does not attribute this purported violation to any particular person or date or specify how long it lasted.

2018 WL 3212463, at *4 (S.D.N.Y. June 29, 2018) (finding issue of fact as to whether plaintiff was deprived of safe and sanitary living conditions where he had one uniform for over two months and for over two weeks it was stained with vomit, causing painful skin rashes and infections).

In sum, none of Plaintiff's claims, considered together or separately, amount to an objective constitutional deprivation. Because Plaintiff's conditions of confinement claims fail on the objective component, the Court need not address whether Defendants acted with deliberate indifference. *See, e.g.*, *Taylor v. Scott*, No. 16-CV-8814, 2018 WL 456307, at *4 (S.D.N.Y. Jan. 17, 2018) (declining to address whether defendants acted with deliberate indifference where the plaintiff failed to state a conditions of confinement claim under the objective component).

Accordingly, for all the reasons stated, Plaintiff raises no genuine material issue of fact and therefore Defendants' Motion for Summary Judgment is granted.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED and this case is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore denies leave to appeal to the Court of Appeals as a poor person. *See Coppedge v. United States*, 369 U.S. 438 (1962). Plaintiff should direct requests to proceed on appeal as a poor person to the United States Court of Appeals for the Second Circuit on motion in accordance with Federal Rule of Appellate Procedure 24.

IT IS SO ORDERED.

Dated: July 9, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court